J-S52025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NADIR K K. PETTAWAY | : | |
| | : | No. 2670 EDA 2019 |

Appeal from the PCRA Order Entered August 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012479-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NADIR K K. PETTAWAY | : | |
| | : | |
| Appellant | : | No. 2671 EDA 2019 |

Appeal from the PCRA Order Entered August 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012480-2011

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    Filed: March 5, 2021

Appellant, Nadir Pettaway, appeals from the orders entered in the

Philadelphia County Court of Common Pleas, at two related dockets, denying

_____

[*] Former Justice specially assigned to the Superior Court.

his first petition filed pursuant to the Post Conviction Relief Act (PCRA),[1] seeking relief from his jury convictions of two counts of criminal attempt — murder of the first degree,[2] and related offenses. On appeal, he challenges the PCRA court's dismissal of his collateral challenges to the effectiveness of his trial counsel (Trial Counsel). We affirm.

The PCRA court summarized the genesis of this appeal as follows:

> On October 8, 2011, David Leis and Jessica Clark were in North Philadelphia using controlled substances from 4:00 p.m. until 10:00 p.m. The next morning, around 5:30 a.m., Leis and Clark headed towards West Philadelphia, to the area of 63rd and Market Street, intending to meet with an acquaintance. When Leis and Clark arrived at the acquaintance[']s house, around 6:30 a.m., no one answered the door. At that point [Appellant], who later introduced himself to Leis and Clark as "Shizz," pulled up in a car and asked them if they wanted to purchase crack cocaine. Leis and Clark answered in the affirmative, and then got into [Appellant's] car to begin a drug transaction. [Appellant] drove Leis and Clark around West Philadelphia and, while in the car, Leis and Clark smoked crack cocaine and purchased more from [Appellant] . . . until they ran out of money.
>
> In an effort to continue with their drug use, Leis, Clark, and [Appellant] agreed that Clark would perform oral sex on [Appellant] in exchange for more crack cocaine. [Appellant] then drove to a house located on 63rd Street, which the three entered after [Appellant] unlocked and opened the door. Once inside, [Appellant] and Clark went into a separate room for a few minutes, after which Leis, Clark[,] and [Appellant] exited the house and reentered [Appellant's] car. While riding in the car, Leis asked [Appellant] if he and Clark "could have the drugs now?" [Appellant] first ignored the question and then he made an excuse for delaying delivery of the drugs. [Appellant] next pulled the car

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 901(a).

in to a gas station and while he was pumping gas, Leis got out of the car and punched [Appellant] in the back of the head. [Appellant] then looked at Leis, and told him that he was going to "air him out," which he later explained to mean kill/shoot him. [Appellant] then got back into his car and drove off, leaving Leis and Clark at the gas station.

A short time later, at about 9:54 or 9:55 a.m., while walking towards 63rd and Market Street, Leis and Clark clearly saw [Appellant] walking towards them with his hood up. When Leis and Clark observed [Appellant] reach for his waistband, they started running. As Leis ran, he lost sight of Clark, heard gunshots[,] and felt something in his side and back. Realizing that he was shot, Leis ran across the street covered in blood, where bystanders came to his aid. Within minutes, police officers responded to the incident and found Clark lying in the middle of the street in a puddle of blood suffering from multiple gunshots. Due to the severity of their wounds, [o]fficers immediately transported both complainants to the University of Pennsylvania Hospital. Leis was shot three times — once in his back, arm[,] and shoulder — and underwent two surgeries. Clark was shot several times in her upper body, underwent several extensive surgeries and temporally required the assistance of a walker.

Because of their conditions, neither complainant was able to speak to Southwest Detectives upon their initial arrival at the hospital. After surgery, both spoke briefly with detectives and were subsequently shown a photo array, where they immediately identified [Appellant] as the shooter. Leis also directed Detectives to Clark's purse which contained a piece of paper where the [Appellant] had written his phone number and where Clark had written, Shizz, the name given to them by [Appellant]. After properly obtaining a warrant, Detectives contacted the phone company and discovered that the phone number was subscribed to Ruby M. Pettaway, [Appellant's] mother. Detectives were also able to retrieve the incoming and outgoing call log and geographical location where the calls were placed in order to locate [Appellant]. [Appellant] turned himself into the police on October 15, 2011. Both complainants, while testifying, identified [Appellant] in court as the person who shot them.

PCRA Ct Op., 1/13/20, at 1-3 (unpaginated) (record citations omitted).

Appellant was subsequently arrested and charged with, *inter alia*, two counts each of attempted murder, aggravated assault, and possession of an instrument of crime.[3] He was also charged with one count each of persons not to possess firearms, carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia.[4] On August 31, 2012, a jury found Appellant guilty of all charges. Appellant was sentenced to an aggregate term of 30 to 60 years' imprisonment across both dockets. This Court affirmed the judgment of sentence on direct appeal, and the Pennsylvania Supreme Court denied *allocatur* review. **See Commonwealth v. Pettaway**, 935 EDA 2013 & 937 EDA 2013 (Pa. Super. Aug. 19, 2014), *appeals denied*, 466 EAL 2014 & 467 EAL 2014 (Pa. Feb. 19, 2015).

On December 30, 2015, Appellant timely filed his first PCRA petition *pro se*. Counsel was appointed and filed an amended petition on April 25, 2018, followed by a supplemental petition on September 25, 2018.[5] The Commonwealth filed a motion to dismiss Appellant's amended petition on

---

[3] 18 Pa.C.S. §§ 2702(a), 907(a). The charges involving the shooting of Clark were filed at trial docket number CP-51-CR-0012479-2011 (Docket 12479), and the charges involving the shooting of Leis were filed at trial docket number CP-51-CR-0012480-2011 (Docket 12480).

[4] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), 6108. The firearms offenses were charged on Clark's docket (Docket 12479).

[5] The certified record does not contain the September 25th, supplemental petition.

October 11, 2018.  Appellant then filed both a motion for leave to amend his petition, and a second, amended PCRA petition on December 11, 2018.[6]  The Commonwealth filed an additional response on February 5, 2019.  On July 8, 2019, the PCRA court sent notice to Appellant of its intent to dismiss his petition without a hearing pursuant to Pa.R.Crim.P. 907.  On July 29, 2019, Appellant filed an objection to the court's Rule 907 notice.  Ultimately, an order dismissing Appellant's PCRA petition was entered on August 7, 2019.

Appellant filed separate notices of appeal from each of his two dockets on September 6, 2019.[7]  On September 24, 2019, Appellant was ordered to file a Pa.R.A.P. 1925(b) concise statement, which he timely filed on October 15, 2019.  Appellant's cases were consolidated *sua sponte* by order of this Court dated October 16, 2019.  Order, 10/16/19.  The PCRA court filed a Pa.R.A.P. 1925(a) opinion on January 13, 2020.

Appellant presents the following issues for our review:

> 1.  Did the PCRA court err when it held that Appellant was not prejudice[d] by [Trial Counsel's] failure to object to prosecutorial misconduct during closing arguments where the Commonwealth

---

[6] Although no order granting the motion to amend is included in the certified record, the docket indicates the court granted the motion on December 12, 2019.  **See** Docket 12479 at 12/12/18; Docket 12480 at 12/12/18; Pa.R.Crim.P. 905(A) ("The judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice.").

[7] Appellant has thus complied with the requirements of **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) ("[W]hen a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed.").

misled the jury regarding the facts in evidence and burden of proof?

2. Did the PCRA court err when it held that Appellant was not prejudice[d] by [Trial Counsel's] failure to call a known exculpatory witness?

Appellant's Brief at 2.

Our review of Appellant's issues is guided by well-established principles. When reviewing the denial of a PCRA petition, our standard of review is limited to examining whether the PCRA court's determination is "supported by the record and is free of legal error." *Commonwealth v. Sneed*, 45 A.3d 1096, 1105 (Pa. 2012) (citation omitted). We are to view the evidence in the light most favorable to the prevailing party in the PCRA proceedings. *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012). We note, however, that:

> [T]he PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Sneed*, 45 A.3d at 1105-06 (citations and quotation marks omitted).

In the context of a collateral challenge based on ineffectiveness, counsel is presumed to have been effective. *Sneed*, 45 A.3d at 1106 (citation omitted). To overcome this presumption, a petitioner is required to show: (1) the claim is of arguable merit; (2) counsel lacked an objective, reasonable

basis for their actions; and (3) prejudice resulted from counsel's deficient performance. *Id.* Failure to establish any of the three prongs of this test is fatal to the claim. *Koehler*, 36 A.3d at 132. Finally, "a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the [ ] test, the court may proceed to that element first." *Id.* (citation omitted).

Appellant's first challenge alleges the PCRA court abused its discretion by dismissing his claim that Trial Counsel was ineffective for failing to object to prosecutorial misconduct. Appellant's Brief at 5. He argues two statements made by the Commonwealth at closing served only to mislead the jury: the first, "that Appellant's mother knew [Appellant] was guilty[,]" and the second, that the Commonwealth "had proved [Appellant's] guilt to a 'mathematical certainty[.]'" *Id.* at 9-10. Appellant contends an evidentiary hearing should have been held to assess whether Trial Counsel had reasonable basis for his failure to object. *Id.* at 10.

Our Supreme Court has recognized:

> [A] claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only

when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Koehler*, 36 A.3d at 144, 139 (citations and quotation marks omitted). Additionally, the prosecution must be free to present their arguments with "logical force and vigor." *Sneed*, 45 A.3d at 1110. Comments sounding in "oratorical flair" are not objectionable. *Id.* Moreover, where the allegedly improper remarks are expressed during closing, we review the argument as a whole. *Id.*

In the present case, Trial Counsel proceeded on a theory Appellant's older brother, Shahim Burnett, was the assailant.[8] N.T. Trial, 8/31/12, at 73-74, 82-84, 86. He argued that a trace of the telephone number provided to police by the victims returned the name of Appellant's mother, "Ruby Pettaway," and after determining she did not fit the general description of the perpetrator, police conducted a public search for the name "Pettaway." *Id.* at 82. The public search, Trial Counsel advanced, returned a result for Appellant, who was listed as sharing an address with his mother, and who resembles his older brother Shahim. *Id.* at 83-84.

During trial, Appellant's mother confirmed she had told detectives that, on the day of the shooting, she saw Shahim "getting out of bed" at "[a]round

_____

[8] Appellant is the youngest son of Ms. Ruby Pettaway. N.T. Trial, 8/31/12, at 44. Appellant has two older brothers, Wallik Burnett, and Shahim Burnett. *Id.* at 44-45

noon."[9] N.T., 8/31/12, at 52. She also confirmed that she told detectives she did not see Appellant at the house that morning, but rather, saw him for the first time "later in the day." *Id.* at 53.

Appellant now alleges, without citation to the notes of testimony, prosecutorial misconduct with respect to the Commonwealth's characterization of Ms. Pettaway's testimony at closing, as well as its own burden of proof:

> The only thing left is the brother did it. You can't use Wallik. He's locked up in a federal penitentiary. We got one left. He doesn't look anything like [Appellant], different height, different skin color, at 22 North Hurst Street, as Ruby Pettaway told you. **What better witness to tell you who did it than the mother?** I was at home on Sunday. Shahim lives there with his girlfriend. I saw Shahim around noon.
>
> The evidence in this case is clear. It's compelling. It's convincing. It is proof beyond all doubt**. It is proof to a moral and mathematical certainty** that the man seated in this courtroom, the defendant, Nadir Pettaway, waited for, with malice aforethought and premeditation, waited at 63rd and Market . . . and when David Leis and Jessica Clark came down the street and came around the corner, he gunned them down.

N.T. Trial, 8/31/12, at 98-99 (emphasis added).

In addressing this claim, the PCRA court found Appellant "failed to show that he was prejudiced by [Trial C]ounsel's failure to object. PCRA Ct. Op., at 6. The PCRA court explained:

> There is no indication that there is a reasonable probability that the outcome of the proceedings would have been different had counsel not been ineffective in the relevant regard. The evidence

---

[9] The shooting occurred at approximately 9:55 a.m. *See* N.T., 8/29/12, at 184-85.

of [Appellant's] guilt was overwhelming, where both victims identified [Appellant] as the individual who (1) sold them crack cocaine, (2) who drove them around while they smoked, (3) whom Ms. Clark performed oral sex on in-exchange for more drugs, (4) whom Mr. Leis punched, and (5) who ultimately gunned them both down. Additionally, the Commonwealth provided evidence of [Appellant's] cell phone usage near the location of the shooting.

*Id.* at 5-6.

We agree. In the context of a three-day jury trial yielding three volumes of transcripts with more than 628 pages of testimony, the Commonwealth's closing remarks did not have the unavoidable effect of creating "bias and hostility towards [Appellant,] such that the jurors could not weigh the evidence and render a true verdict." *See Koehler*, 36 A.3d at 144. Rather, the Commonwealth's remarks were the result of "logical force" and amount to nothing more than unobjectionable "oratorical flair." *See Sneed*, 45 A.3d at 1110.

With regard to the comments about Appellant's mother, we note the Commonwealth did not imply Ms. Pettaway identified Appellant as the shooter; instead, it commented on her testimony that Appellant's brother was home at the time of the shooting. Moreover, we also disagree with Appellant's contention that the Commonwealth "misled the jury regarding [its] burden of proof to a 'mathematical certainty.'" Appellant's Brief at 10. Again, we conclude the comment constituted "oratorical flair," which emphasized the Commonwealth's assessment that the evidence against Appellant was overwhelming. *See Sneed*, 45 A.3d at 1110. As such, our review of the record does not reveal the presence of legal error, and we decline to conclude

the PCRA court's determination is not supported by the evidence. ***Koehler***, 36 A.3d at 131.

Furthermore, notwithstanding Appellant's passive mention of the need for an evidentiary hearing "to assess whether trial counsel had reasonable basis for his failure to object[,]" the PCRA court possessed the authority to dismiss Appellant's petition solely for his failure to show that "but for counsel's actions, there [was] a reasonable probability the outcome of the case would have been different." ***See*** Appellant's Brief at 10; ***see also Koehler***, 36 A.3d at 132. We remind Appellant, failure to satisfy any prong of our assessment is fatal to the claim. ***See Koehler***, 36 A.3d at 132***.*** Accordingly, Appellant is entitled to no relief on his first question.

In support of his second challenge, Appellant argues Trial Counsel was ineffective for failing to call a known exculpatory witness, Michael Murphy. Appellant's Brief at 12. He contends Murphy, who claims to have seen a man walking down the street with a gun after the shooting, would have testified "Appellant . . . was not the man with a gun." ***Id.*** at 13. Appellant maintains Murphy's testimony "is sufficient to establish a reasonable doubt as to Appellant's guilt." ***Id.*** at 14.

To succeed on a claim trial counsel was ineffective for failing to call an additional witness, Appellant must show: (1) the witness existed; (2) such witness was available and (3) willing to testify for the defense; (4) counsel knew or should have known of the existence of the witness; and (5) "the absence of the testimony of the witness was so prejudicial as to have denied

the defendant a fair trial." ***Sneed***, 45 A.3d at 1108-09. Appellant also bears the burden of showing "how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Id.*** at 1109 (citation omitted). Finally, decisions regarding the presentation of witnesses generally involve a matter of trial strategy; as such, the failure to call a witness is not *per se* ineffective assistance of counsel. ***Id.***

Appellant attached to his December 11, 2018, amended PCRA petition, the following handwritten statement by Murphy:

> On [October] 9, 2011[,] I was on my way out front of my [apartment] at the time to catch a smoke and to get myself a coffee when I heard something that sounded like gunshots. After a few minutes of smoking my cigarette[,] I saw a short but stocky built[,] dark skin gentlemen [sic] walking with a gun out on his side. After I saw [the] gentlemen [sic] with [a] gun[,] I immediately went back inside. All I can remember about the man was his puffy beard and the gun. And the gentlemen [sic] I saw was surely not [Appellant].

Appellant's Petition for Relief Pursuant to the Post Conviction Relief Act, 12/11/18, Attachment A, Statement of Michael Murphy, 12/3/18 (Murphy's Statement). Appellant also included a handwritten statement by his father, Herbert Pettaway,[10] who claimed Murphy told him Appellant was not the shooter, and he relayed that information to Trial Counsel a month after the shooting. ***See id.***, Attachment B, Statement of Herbert Pettaway, 12/3/18.

In response to Appellant's contentions, the PCRA court opined that Appellant has not demonstrated the necessary prejudice with regard to Trial

---

[10] ***See*** N.T., 8/30/12, at 86 (Appellant identified Herbert Pettaway as his father to detectives).

Counsel's decision not to call Murphy as a witness. PCRA Ct. Op. at 7. The court explained Murphy's statement "describes who left the scene[,] but does not exculpate [Appellant] as Murphy does not claim to have seen the actual shooting." *Id.* Thus, the court concluded, "the uncalled witness would not have been 'beneficial under the circumstances of the case.'" *Id.* (citation omitted).

Here, although Appellant purports to assert Murphy "was available to testify[,]"Murphy's statement does not aver that he was both, available and willing to testify at the time of trial. *See* Appellant's Brief at 13; *see* Murphy's Statement; *see also Sneed*, 45 A.3d at 1108-09. Appellant's claim fails on this basis alone.

Moreover, Appellant has also not shown the absence of Murphy's testimony was so prejudicial as to have denied him a fair trial. *See Sneed*, 45 A.3d at 1109. We agree with the PCRA court's determination that the proposed testimony "does not exculpate [Appellant.]" *See* PCRA Ct. Op. at 7. Indeed, Murphy's account does not free Appellant from blame or accusation, but demonstrates only that Murphy possessed no firsthand knowledge of the shooting. *See Sneed*, 45 A.3d at 1109. Although "Murphy approached [Appellant's father] after Appellant was arrested in this matter and shared this exculpatory information[,]" the proposed testimony would not have been beneficial "under the circumstances of the case." *See* Appellant's Brief at 13; *see also Sneed*, 45 A.3d at 1109. Like the first issue, we conclude the PCRA court's ruling is supported by the evidence of record, and not legally

erroneous. ***See Koehler***, 36 A.3d at 144. Under these circumstances, Appellant has not demonstrated the requisite prejudice and Trial Counsel's performance cannot therefore be categorized as ineffective. No relief is due.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/21